# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
## WESTERN DIVISION

| | | |
|---|---|---|
| MICHAEL W. JAROS, | : | Case No. 03:12CV0500 |
| Petitioner, | : | |
| vs. | : | |
| MARC HOUK, WARDEN, | : | **MAGISTRATE'S REPORT & RECOMMENDATION** |
| Respondent. | : | |

## I. INTRODUCTION.

Pursuant to UNITED STATES DISTRICT COURT NORTHERN DISTRICT OF OHIO LOCAL CIVIL RULES 72.2(b)(2), this case was automatically referred to the undersigned Magistrate Judge for report and recommendation.   Pending are Petitioner's Petition for Writ of Habeas Corpus, Respondent's Return of Writ, and Petitioner's Traverse (Docket Nos. 1, 9 & 10).  For the reasons that follow, the Magistrate recommends that the Court deny the Petition for Writ of Habeas Corpus.

## II. FACTUAL BACKGROUND

Because Petitioner filed his habeas petition after the enactment of the ANTITERRORISM AND EFFECTIVE DEATH PENALTY ACT (AEDPA), codified at 28 U.S.C. § 2254(d) on April 24,

1996, the Court applies the AEDPA standard of review.  *Cooey v. Coyle*, 289 F. 3d 882, 896 (6th Cir. 2002) *cert. denied,* 123 S. Ct. 1620 (2003).  Under AEDPA, the state court's findings of fact are presumed to be correct unless they are rebutted by clear and convincing evidence.  *Montes v. Trombley*, 599 F.3d 490, 494 (6th Cir.2010) (*citing Benge v. Johnson*, 474 F.3d 236, 241 (6th Cir.2007).

Here, Petitioner has not presented any evidence to rebut the findings of facts made by the court of appeals.  The following is a summation of undisputed facts presumed to be correct and deemed relevant to the appeal:

> Tiffany Robinson is the victim in this case.  She was married to Petitioner. During the course of her relationship with Petitioner, she obtained a restraining order against him.
>
> On June 17, 2009, Petitioner broke into the victim's residence where he waited for her to return home.  When the victim and her four-year-old son arrived at her home, she took her son upstairs to get ready for bed.  After the victim and her son entered the son's bedroom, Petitioner entered into the bedroom and physically restrained the victim.  The victim was restrained at the point of a knife.  Petitioner demanded numerous sexual acts from the victim.  The victim cooperated.
>
> After forcibly restraining the victim and taking sexual liberties with her for several hours, Petitioner stole her vehicle and fled the scene.  A short time later, the victim discovered that Petitioner had left her cell phone on the front porch and she called the police.  After the Toledo Police arrived and investigated the crime scene, they instructed the victim to go to a hospital in order for a rape kit examination to be performed.
>
> Subsequent to these events, Petitioner persisted in calling and sending text messages to the victim from his own mobile phone.  In fact, both the Oregon Police Department (OPD) and Federal Bureau of Investigation (FBI) agents traced multiple calls originating in Georgia, Tennessee, Kentucky, and Ohio placed from Petitioner to the victim.  On June 21, 2009, the content of these messages was reviewed by the investigating police officers on the victim's cell phone.
>
> The messages were saved and electronically mailed (emailed) to OPD.  The messages were printed out, verified, and maintained in a secured evidence area.

2

Ultimately, Petitioner was apprehended in Vandalia, Ohio. Despite being in custody at the Montgomery County jail, Petitioner again persisted in contacting the victim. Petitioner mailed correspondence to the victim expressing remorse for the actions against her which initiated this case.

*State v. Jaros*, 2011 WL 4529312, *1 (2011).

### III. PROCEDURAL BACKGROUND.

During the May term of 2009, the jurors of the Grand Jury of Lucas County, Ohio, filed

the following five-count indictment against Petitioner based on the events of June 17, 2009:

| COUNTS | CHARGES |
|--------|---------|
| 1. | Rape, a violation of OHIO REV. CODE § 2907.02(A)(2) and (B)[1]; |
| 2. | Rape, a violation of OHIO REV. CODE § 2907.02(A)(2) and (B); |
| 3. | Aggravated burglary, a violation of OHIO REV. CODE § 2911.11(A) (2); |
| 4. | Kidnaping, a violation of OHIO REV. CODE § 2905.01(A) (4) and (C)[2]; and |
| 5. | Aggravated Robbery, a violation of OHIO REV. CODE § 2911.01(A)(1). |

(Docket No. 9-1, pp. 4-6 of 224).

---

[1]

(A) (2) No person shall engage in sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force.

(B) Whoever violates this section is guilty of rape, a felony of the first degree. If the offender under division (A)(1)(a) of this section substantially impairs the other person's judgment or control by administering any controlled substance described in section 3719.41 of the Revised Code to the other person surreptitiously or by force, threat of force, or deception, the prison term imposed upon the offender shall be one of the prison terms prescribed for a felony of the first degree in section 2929.14 of the Revised Code that is not less than five years.

OHIO REV. CODE § 2907.02(A)(1) and (B) (Thomson Reuters 2012).

[2]

(A) No person, by force, threat, or deception, or, in the case of a victim under the age of thirteen or mentally incompetent, by any means, shall remove another from the place where the other person is found or restrain the liberty of the other person, for the purpose:

(4) engaging in sexual activity, . . . with the victim against the victim's will.

(C)(1) Whoever violates this section is guilty of kidnapping. Except as otherwise provided in this division or division (C)(2) or (3) of this section, kidnapping is a felony of the first degree. Except as otherwise provided in this division or division (C)(2) or (3) of this section, if an offender who violates division (A)(1) to (5), (B)(1), or (B)(2) of this section releases the victim in a safe place unharmed, kidnapping is a felony of the second degree.

OHIO REV. CODE § 2905.01(A) (4) and (C) (Thomson Reuters 2012).

After a jury trial, the following verdicts and sentences were entered:

| COUNTS | VERDICT | SENTENCE |
|--------|---------|----------|
| 1. | Not guilty | ------------- |
| 2. | Not guilty | ------------- |
| 3. | Guilty | Nine years |
| 4. | Guilty | Nine years |
| 5. | Guilty | Nine years |

(Docket No. 9-1, p. 9 of 224).

The court ordered that the sentences on all counts were to be served consecutively and Petitioner was notified of the mandatory five years of post-release control (Docket No. 9-1, pp. 10-11 of 224).

**A.    DIRECT APPEAL.**

Petitioner filed a notice of appeal of the underlying sentence on April 12, 2010 (Docket No. 9-1, p. 12 of 224).  There were three assignments of error:

1.    The trial court abused its discretion when it admitted Petitioner's out-of-court statements over an objection.
2.    The trial court abused its discretion by not declaring a mistrial for references about Petitioner's custodial status.
3.    Petitioner's convictions were against the manifest weight of the evidence.

(Docket No. 9-1, p. 17 of 224).

The State of Ohio's response was:

1.    There was sufficient authentification to permit a lower court to properly admit written out of court statements made by party opponents.
2.    The trial court did not abuse its discretion by denying Petitioner's motions for a mistrial due to custodial references.
3.    Petitioner's convictions were not against the manifest weight of the evidence.

(Docket No. 9-1, p. 32 of 224).

On September 30, 2011, the Court of Appeals for the Sixth Appellate District affirmed

4

Petitioner's conviction for the reasons that:

1.      Coupled with the fact that Petitioner's messages to the victim were emailed to the
        police department, printed, maintained and stored in a secured evidence area, the
        victim and the investigating officer properly identified and authenticated the text
        messages and letters at trial.  These facts and findings satisfied the requirements
        for admissibility under OHIO EVID. R. 901(A) and (B)(1), (4).

2.      There was ample objective compelling evidence of guilt and the prosecution did
        not go beyond the evidence presented to the jury.  The evidence in the record does
        not demonstrate that the jury would not have found Petitioner guilty had there
        been any alleged misconduct on the part of the prosecution.

3.      As concluded above, the record encompasses abundant, credible evidence in
        support of Petitioner's conviction.

(Docket No. 9-1, pp. 51-60 of 224).

**B.**     **APPEAL TO THE SUPREME COURT OF OHIO.**

On November 3, 2011, Petitioner filed a notice of appeal from the court of appeal's

judgment entered on September 30, 2011, and a memorandum in support of jurisdiction, in the

Supreme Court of Ohio.  Three propositions of law were presented:

1.      When considering Petitioner's claim that the trial court abused its discretion in
        admitting out-of-court statements, EVID. R. 901 should be interpreted as to email
        messages purportedly originating from the accused, to require foundational
        evidence establishing some indicia of the alleged sender of the email having
        access to the originating computer or other electronic device at the time the email
        was sent.

2.      When considering Petitioner's claim that the trial court abused its discretion by
        not declaring a mistrial for references about Petitioner's custodial status, an
        appellate court must rely upon findings of fact that are not inconsistent with the
        verdict of the jury.

3.      When considering a claim that Petitioner's convictions were against the manifest
        weight of the evidence, in the context of inconsistent verdicts, the rule in *Griffin
        v. State*[3] should be modified such that although each count of an indictment

---

[3]

The *Griffin* court found that the verdicts were inconsistent because the jury found that a single murder was
committed on June 12, 1868 and June 13, 1868.  18 Ohio St. 438, 442, 1868 WL 45, *3 (1868).

5

charges a complete offense and although the separate counts of an indictment generally are not interdependent, but are, and necessarily must be, each complete in itself, and although in determining the effect of a verdict that responds by designation to a given count the other counts of the indictment will be ignored, and the response of the jury to such other counts likewise ignored, an inconsistency does not arise, unless it arises out of inconsistent responses to the same count or out of inconsistent responses to the same counts that would be subject to a merger had verdicts of guilt been rendered as to each, because allied offenses of similar import out of the same act are the "same counts" for purposes of analyzing Ohio's general rule as to inconsistent verdicts.

(Docket No. 9-1, p. 64 of 224).

On November 21, 2011, the State of Ohio proffered a memorandum in opposition to jurisdiction:

1.  EVID. R. 901(A) establishes that the requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims.  This threshold standard does not require conclusive proof of authenticity.

2.  The granting of a mistrial in necessary only in the extreme scenario where a fair trial is no longer possible.  A mistrial should not be granted in a criminal case unless substantial rights of either the defendant or the prosecution are prejudicially affected.  Accordingly, any error which does not affect substantial rights shall be disregarded.  If it appears that a verdict for the party represented by such offending counsel is clearly justified by the evidence, the verdict may be allowed to stand.  To determine whether references to a defendant's prior custodial status denied him a fair trial and totality of the trial must be considered.

3.  The fact-finder is best suited to view the witnesses, observe their demeanor, and utilize these firsthand observations in weighing the credibility of the evidence and testimony.  Judgments of fact supported by some competent, credible evidence will not be reversed by a reviewing court unless they are clearly against the manifest weight of the evidence.

(Docket No. 9-1, p. 84 of 224).

The State filed a memorandum in opposition on November 22, 2011, arguing that:

1.  The appellate court should give substantial deference to the choice of errors that the initial appeals counsel decided to pursue;

6

2.    Petitioner cannot sustain his burden to demonstrate that there were colorable claims of ineffective assistance of counsel; and

3.    Additional assignments of error did not have a reasonable probability of success on the merits

(Docket No. 9-1, pp. 124-132 of 224).

On February 1, 2012, Chief Justice Maureen O'Connor of the Supreme Court of Ohio declined jurisdiction to hear the challenge to Petitioner's conviction and dismissed the appeal as not involving any substantial constitutional question(Docket No. 9-1, p. 99 of 224).

## C    MOTION FOR NEW TRIAL.

On March 30, 2011, Petitioner, with new counsel, filed a motion for a new trial in the common pleas court in which he made presented two affidavits which he proclaimed were relevant to his defense:

Affidavit 1.    Racquel Jaros, Petitioner's sister, conversed with the victim during a social event and discovered that the victim's version of the events from June 17, 2009, involving Ms. Jaros' brother was "far different and not incriminating toward Michael Jaros as it related to her previous trial testimony."

Affidavit 2.    Ashton Rumph, Petitioner's niece, attended the same party as Racquel Jaros and asked that the victim tell her what really happened between her and Petitioner.  The victim's account relayed to the police and the account given Mr. Rumph was different.  The victim admitted that she invited Petitioner to her residence, she never mentioned that Petitioner put a knife to her throat or physically attacked her otherwise and she gave Petitioner the keys to her truck.

Petitioner argued that he was unavoidably prevented from discovering this evidence within the 120 days after the trial[4] (Docket No. 9-1, p. 180-188 of 224).

The State filed an opposition on April 12, 2011, arguing that Petitioner was not

---

[4]

Motions for new trial on account of newly discovered evidence shall be filed within one hundred twenty days after the day upon which the verdict was rendered.  OHIO CRIM. R. 33(B)(6) (Thomson Reuters 2012).

7

unavoidably prevented from discovering this evidence within the 120-day window provided by OHIO CRIM. R. 33(B).  Alternately, the affidavits were not newly discovered and neither were of the character that there is a strong probability that the outcome of the trial would be different (Docket No. 9-1, pp. 189-193 of 224).

On September 27, 2011, Judge Dean Mandross denied the motion for new trial on the basis that:

1.  Petitioner failed to follow the proper procedure which required that he first seek leave to file a delayed motion.
2.  Notwithstanding the error in procedure, Petitioner provided no justification for the significant delay (one year) in presenting the new information to the court.
3.  There is Supreme Court precedent that new evidence is specifically excluded if it merely impeaches or contradicts the former evidence and does not disclose a strong probability that it will change the result.

(Docket No. 9-1, pp. 194-199 of 224).

Petitioner did not appeal this denial to the Supreme Court of Ohio.

**D.    APP. RULE 26(B)-APPLICATION FOR REOPENING.**

On November 3, 2011, Petitioner filed an application for reopening pursuant to APP. R. 26(B), in the appellate court, arguing that appellate counsel "dropped the ball" by failing to include in the direct appeal, two critical aspects of the trial:

1.  The jury's verdict was inconsistent; and
2.  The aggravated burglary was handled in such a way as to deprive Petitioner of substantial justice and due process.

Petitioner proposed six additional assignments of error that appellate counsel failed to identify:

4.  The trial court erred by instructing the jury and answering a series of questions by the jury as to imply to the jury that the sexual activity aspect of the kidnaping charge could be consensual sexual activity and not sexual activity against her will.
5.  Trial counsel was ineffective for not objecting to the jury instructions that caused the error described in Assignment of Error Four above and not seeking a

clarification of the need that the sexual activity be "against her will" when the jurors asked questions exposing this misunderstanding by the jury of the elements of the kidnaping charge.

6. The inconsistent verdict for kidnaping was a result of juror belief that the sexual activity as consensual nonetheless sufficed and as such was against the manifest weight of the evidence as interpreted by the jury, namely, that the sexual activity was, in fact, consensual.

7. The trial court erred by not instructing the jury as to the specific criminal offense *mens rea* element of the aggravated burglary charge and in not using special verdicts or separate verdicts as this case involved non-grouped theories by the prosecution, such that Petitioner was denied due process of law.

8. Trial counsel was ineffective for not objecting to the jury instructions that caused the error described in Assignment of Error seven and in not seeking clarification of the specific criminal offense by way of jury questionnaires, special verdict forms or separate verdict forms.

9. Because of the inconsistent verdict for kidnaping that was a result of juror belief that the sexual activity as consensual nonetheless sufficed and as such was against the manifest weight of the evidence as interpreted by the jury, namely that the sexual activity was, in fact, consensual and because the trial court failed to explain which "any criminal offense" applied, the conviction for aggravated burglary was against the manifest weight of the evidence.

(Docket No. 9-1, pp. 100-110, 142-143 of 224).

On November 29, 2011, the appellate court rendered a decision on the application for reopening under APP. R. 26(B).  The court acknowledged the seven proposed assignments of error arising from two determinative assumptions:

1. The jurors were confused and misled regarding the phrase "against the victim's will."

2. The jurors were confused and misled regarding the phrase "any criminal offense."

After carefully reviewing and considering Petitioner's application to reopen and brief in support, the court found that Petitioner had set forth no substantive grounds for relief (Docket No. 9-1 pp. 133-137 of 224).

Petitioner appealed the denial of the application to reopen by lodging an appeal in the Supreme Court of Ohio on December 16, 2011.  In the memorandum in support of jurisdiction,

Petitioner argued that appellate counsel was ineffective and that the case should be reopened to focus on the additional six assignments of error (Docket No. 9-1, pp. 140-156 of 224).

In the memorandum in opposition filed on December 30, 2011, by the State of Ohio, there was a request that the Supreme Court of Ohio deny Petitioner's application for the reason that the court of appeals correctly decided the application (Docket No. 9-1, pp. 164-178 of 224).

On February 22, 2012, Chief Justice O'Connor dismissed the application to reopen under APP. R. 26 as not involving any substantial constitutional question (Docket No. 9-1, p. 179 of 224).

E.      PETITION FOR WRIT OF HABEAS CORPUS.

On March 1, 2012, Petitioner filed a Petition for Writ of Habeas Corpus in this Court. His request for habeas relief is based on the following grounds for relief:

1.      State appellate court cannot deny a timely and complete motion to reopen an appeal without ruling upon whether there is or is not a genuine issue as to the effectiveness of appellate counsel.
        **Relevant Supporting Facts**:
        The Ohio appellate system has a means of reopening appeals on the basis of ineffective assistance of appellate counsel.  Petitioner followed that procedure in a timely manner, asserting that appellate counsel missed several issues.  The Ohio appellate court denied reopening by ruling that Petitioner did not present "substantial grounds for relief," thereby limiting the issue not to whether counsel was or was not constitutionally ineffective but rather as to the merits of the underlying proposed assignments of error.  This was done despite Ohio law that allowed Petitioner a full and complete opportunity to brief the merits of his claims.

2.      A State appellate court cannot deny a timely and complete motion to reopen an appeal by reviewing the propositions of law on the merits but must instead limit its review before full briefing to the lesser standard of whether Petitioner has shown a "genuine issue."
        **Relevant Supporting Facts:**
        *See above*.  Also, consider Ohio's reopening procedure must comply with due process and with the faithful preservation of the federal constitutional right. When the Sixth District, as affirmed by the Ohio Supreme Court, limited the

review not to the question of the effectiveness of appellate counsel but instead to the merits of the argument, without Ohio procedures allowing for a briefing on that issue, the cart was before the horse. Petitioner, by Rule and by page limitations, was not allowed to argue the merits unless and until he established ineffectiveness of counsel. The Sixth District, however, never addressed effectiveness of appellate counsel but instead rejected the reopening without opportunity for full briefing because of a judgment of the merits.

3.   If a State appellate court denies a timely and complete motion to reopen an appeal by reviewing the propositions of law on the merits, this operates as if reopening was granted but the merit arguments denied, such that a full right to appeal the proposed assignments or error arises.
**Relevant Supporting Facts**:
This issue is raised to, in essence, rebut any possible claim by the Respondent that somehow the remaining issues were not ruled upon in Ohio and hence somehow not subject to habeas review. *See above for additional information*.

4.   Trial counsel was ineffective for not objecting to jury instructions, for seeking clarification of specific criminal offense by special verdict and for not seeking clarification of the need that the sexual activity be "against her will."
**Relevant Supporting Facts:**
Petitioner was charged with Rape and with Kidnaping for the rape. He was acquitted of the rape but convicted of the kidnaping of the type that required the rape (otherwise it would be "unlawful restraint" only). This of course makes no sense, as a person cannot possibly be acquitted of the act but convicted of a higher offense that includes that act and other acts, as these would be inconsistent verdicts. The jury instruction and follow-up Q&A convinced the jury that the sex tied to the kidnaping could be consensual sex, which is wrong. Defense counsel knew that they had this misconception but did not attempt to correct this, either by correcting the instructions or seeking better clarification when the jury inquired as to this.

5.   The Trial Court erred by instructing the jury and answering a series of questions by the jury so as to imply to the jury that the "sexual activity" aspect of the Kidnaping charge could be consensual sexual activity and not sexual activity against her will and by not instructing the jury as to the specific criminal offense *mens rea* element in the Aggravated Burglary charge and in not using special verdicts or separate verdicts, as this case involved non-grouped theories by the prosecution, such that Petitioner was denied due process of law.
**Relevant Supporting facts:**
Petitioner was indicted on June 17, 2009, for two acts of rape, two acts of aggravated burglary and one act of kidnaping. The accuser and accused disagreed as to what happened, the jury heard both sides and acquitted Petitioner of the alleged rape, despite agreement and clear proof that sex occurred, obviously

because the sex was deemed consensual.  Strangely the jury concluded that Petitioner was nonetheless guilty of the kidnaping charge, which requires that the sexual activity be done against her will.  This inconsistent verdict seems to have resulted by a series of errors.

(Docket No. 1, pp. 6--11 of 16).

Respondent's counter-response is:

1.  Petitioner's first three grounds must be dismissed as they are non-cognizable claims for habeas review.

2.  Petitioner's fourth and fifth grounds for relief are procedurally defaulted.  They are not saved from default based on good cause, a miscarriage of justice and actual innocence principles.  Petitioner's fourth and fifth grounds for relief are not subject to habeas review.

(Docket No. 9).  p. 6-9 of 16).

### IV. JURISDICTIONAL PREREQUISITE TO HABEAS REVIEW.

A habeas application that is made by a person in custody pursuant to the judgment of a state court may be entertained "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  *Sanborn v. Parker,* 629 F.3d 554, 564 (6th Cir. 2010) *cert. denied*, 132 S.Ct. 498 (2011) (*citing* 28 U.S.C. § 2254(a)).  The writ is operative against the custodian who is subject to the personal jurisdiction of the court.  *Id.*  For prisoners, the warden of the facility in which they are held is the proper custodian.  *Roman v. Ashcroft*, 340 F.3d 314, 319 (6th Cir. 2004) (as a general rule, a petitioner should name as a respondent to his habeas corpus petition the individual having day-to-day control over the facility in which petitioner is being detained).

In the instant case, Petitioner, confined in Lorain Correctional Institution, is in custody pursuant to state law and Respondent admits that in his capacity as warden, he is Petitioner's custodian.  Petitioner challenges the validity and duration of his confinement as a violation of the

12

Sixth and Fourteenth Amendments of the United States Constitution.  This Court has jurisdiction over the parties and the power to grant a writ of habeas corpus to Petitioner.

### V. Habeas Corpus Standard of Review.

The standard for reviewing state-court determinations on habeas cases is governed by the AEDPA.  *Montes v. Trombley*, 599 F.3d 490, 494 (6th Cir. 2010) (*citing Ivory v. Jackson*, 509 F. 3d 284, 291 (6th Cir. 2007) *cert. denied*, 128 S.Ct. 1897 (2008)).  AEDPA provides:

> a federal court may not grant a writ of habeas to a petitioner in state custody with respect to any claim adjudicated on the merits in state court unless (1) the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court," or (2) the state court's decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings."

*Id.* (*citing Taylor v. Withrow*, 288 F.3d 846, 850 (6th Cir.2002) (citation omitted) *cert. denied*, 123 S.Ct. 490 (2002) (*quoting* 28 U.S.C. § 2254(d)).

A state-court decision is considered "contrary to . . . clearly established federal law" if the two are "diametrically different, opposite in character or nature, or mutually opposed."  *Id.* (*citing Williams v. Taylor*, 120 S.Ct. 1495, 1519 (2000) (internal quotation marks omitted) (*quoting* Webster's Third New International Dictionary 495 (1976)).  Alternatively, to be deemed an "unreasonable application of . . . clearly established Federal law," a state-court decision on the merits must be "objectively unreasonable," not simply incorrect.  *Id*. (*citing Williams*, 120 S.Ct. at 1521-1523).  A federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  *Williams,* 120 S.Ct. at 1522.  Rather, that application must also be unreasonable.  *Id.*

But there are exceptions to the requirement of AEDPA deference.  *Id.*  For one, if a claim

is fairly presented to the state courts, but those courts fail to adjudicate the claim on the merits, then the pre-AEDPA standards of review apply. *Id.* (*citing Cone v. Bell*, 129 S.Ct. 1769, 1784 (2009)). Under such review, questions of law, including mixed questions of law and fact, are reviewed *de novo*, and questions of fact are reviewed under the clear-error standard. *Id.* (*citing Brown v. Smith*, 551 F.3d 424, 430 (6th Cir.2008)). The federal habeas court will make its own independent determination of his or her federal claim without being bound by the determination on the merits of the claim reached in state proceedings. *Harries v. Bell*, 417 F.3d 631, 634-635 (2005) (*citing Buell v. Mitchell*, 274 F.3d 337, 344 (6th Cir.2001) (*quoting Wainwright v. Sykes*, 97 S.Ct. 2497, 2506 (1977)).

## VI. EXHAUSTION AND PROCEDURAL DEFAULT.

The right to petition for a writ is not unlimited. A prisoner must usually pursue all available remedies in the state court before turning to the federal courts for relief. This federal district court may not generally consider the merits of a petitioner's federal claim if the state court previously dismissed the claim for failure to comply with state procedural law.

## 1. THE DOCTRINE OF EXHAUSTION.

A state prisoner must exhaust his state remedies before bringing his claim in a federal habeas corpus proceeding. *Drummond v. Houk,* 761 F. Supp. 2d 638, 662 (N. D. Ohio 2010) (*citing* 28 U.S.C. § 2254(b), (c); *see Rose v. Lundy*, 102 S. Ct. 1198, 1205 (1982)). Exhaustion is fulfilled once a convicted defendant seeks review of his or her claims on the merits from a state supreme court. *Id.* (*citing O'Sullivan v. Boerckel*, 119 S. Ct. 1728, 1732 (1999)). A habeas petitioner satisfies the exhaustion requirement when the highest court in the state in which the petitioner has been convicted has had a full and fair opportunity to rule on the claims. *Id.* (*citing*

14

*Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994) (*citing Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir. 1990)).  If, under state law, there remains a remedy that a petitioner has not yet pursued, exhaustion has not occurred, and the federal habeas court cannot entertain the merits of the claim.  *Id.* (*see Rust*, *supra*).

A petitioner "'cannot obtain federal habeas relief under 28 U.S.C. § 2254 unless he has completely exhausted his available state court remedies to the state's highest court.' "  *Id.* at 663 (*citing Buell v. Mitchell*, 274 F.3d 337, 349 (6th Cir. 2001) (*quoting Coleman v. Mitchell*, 244 F.3d 533, 538 (6th Cir. 2001)).  In circumstances where the petitioner has failed to present a claim in state court, a habeas court may deem that claim procedurally defaulted because the Ohio state courts would no longer entertain the claim.  *Id.* (*see Buell*, *supra*, 274 F.3d at 34).  To obtain a merit review of the claim, the petitioner must demonstrate cause and prejudice to excuse his failure to raise the claim in state court, or that a miscarriage of justice would occur were the habeas court to refuse to address the claim on its merits.  *Id.* (*citing Seymour v. Walker*, 224 F.3d 542, 550 (6th Cir. 2000) (*citing Wainwright v. Sykes,* 97 S. Ct. 2497, 2506 (1977)).

2.    APPLICATION OF THE EXHAUSTION STANDARD TO THIS CASE.

The Magistrate acknowledges that Respondent does not agree that Petitioner exhausted his fourth and fifth claims for relief.  However, there is considerable overlapping in the substance of Petitioner's fourth and fifth claims for relief and Petitioner presented these claims or the substance of these claims in the supplement to the delayed RULE 26(B) application as part of the direct review process.  The Supreme Court of Ohio subsequently had a full and fair opportunity to consider Petitioner's fourth and fifth claims for relief.  Accordingly, the Magistrate considers that all of Petitioner's claims have been fundamentally exhausted and each

15

ground is therefore reviewed on its merits.

## VII. ANALYSIS OF GROUND ONE.

The state appellate court cannot deny a timely and complete motion to reopen an appeal without ruling upon whether there is or is not a genuine issue as to the effectiveness of appellate counsel.

The Magistrate construes Petitioner's first claim as a due process violation, most of which relies on the application of state law. Petitioner argues that he followed the appropriate procedure when he filed an application to reopen, asserting a claim that appellate counsel failed to assert critical issues on appeal. The state court abused its discretion by denying the application on the grounds that he did not present substantial grounds for relief. Petitioner suggests that the decision of whether to grant the motion for a new trial was so intertwined with counsel's ineffectiveness that it was error to deny him a new trial without first determining if he had a legitimate claim for counsel's ineffectiveness.

The phrase "clearly established Federal law" refers to holdings, as opposed to dicta, of the United States Supreme Court at the time of the relevant state court decision.  *Lowe v. Swanson*, 639 F.Supp.2d 857, 868-869 (N.D.Ohio,2009) *aff'd* 663 F. 3d 258 (2011) (*citing Lockyer v. Andrade*, 123 S.Ct. 1166, 1172 (2003); *Williams v. Taylor, supra,* 120 S. Ct. at 1523; *Bell v. Cone,* 122 S.Ct. 1843, 1852 (2002)).  "[I]t is not 'an unreasonable application of clearly established Federal law' for a state court to decline to apply a specific legal rule that has not been squarely established by [the Supreme] Court."  *Id.* (*citing Knowles v. Mirzayance*, 129 S.Ct.1411, 1419 (2009) (*quoting Wright v. Van Patten*, 128 S.Ct. 743, 746-747 (2008) ( per curiam ); *Schriro v. Landrigan*, 127 S.Ct. 1933, 1942 (2007); *Carey v. Musladin*, 127 S.Ct. 649, 654 (2006)).

16

The Magistrate finds that the state court's interpretation of its own laws or rules provides no basis for federal habeas relief, particularly since Petitioner has failed to show that the application of a specific legal rule that has been established by the holdings of the Supreme Court as of the time of the relevant state court decision.  Petitioner has not implicated a substantive or procedural right that rises to the level of a constitutional error or that the alleged defect in the state court's interpretation of its own laws undermines the legality of Petitioner's conviction.  Thus, his first claim is not cognizable in federal habeas corpus.

### VIII. ANALYSIS OF GROUND TWO

A state appellate court cannot deny a timely and complete motion to reopen an appeal by reviewing the propositions of law on the merits but must instead limit its review before full briefing to the lesser standard of whether the appellant has shown a "genuine issue.

Ground two is a variation of ground one–the state court erred in its interpretation and application of state law.  For the same reasons, the Magistrate finds that it is not within the province of a federal habeas to examine state court determinations on state law questions, particularly with regard to the state's interpretation and application of its rules of evidence.  Such claims are not cognizable in federal habeas corpus.

### IX. ANALYSIS OF GROUND THREE.

If a state appellate court denies a timely and complete motion to reopen an appeal by reviewing the propositions of law on the merits, this operates as if reopening was granted but the merit arguments denied, such that a full right to appeal the proposed assignments or error arises.

Ground three is a variation of grounds one and two with an exception:  the state appellate court's decision to deny his motion to reopen rests squarely on his ineffective assistance of counsel claim.  Stated differently, the appellate court failed to permit Petitioner to prove that the reason he failed to comply with the procedural rules was due to the ineffectiveness of counsel.

Petitioner's restated claim is still based on the appellate court's decision to apply its own procedural rules.  Federal habeas relief does not apply to evidentiary and procedural challenges to the state court determinations of state law questions.

### X.  ANALYSIS OF GROUND FOUR.

Trial counsel was ineffective for not objecting to jury instructions on kidnaping, seeking clarification of a specific criminal offense by special verdict and for failing to seek clarification of the need that the sexual activity be "against her will."

The fourth claim of error presents a difficult question.  Petitioner argues that rape includes the act of sexual activity against one's will and kidnaping incorporates the act of rape. The verdicts amounting to an acquittal on the rape charge and conviction on the kidnaping charge are wholly inconsistent.

It is inconsequential to the outcome of this habeas review whether counsel objected to the rape instructions since Petitioner was acquitted on both counts of rape.  Petitioner challenges his trial counsel's failure to object to the instructions on kidnaping which was incidental to committing the rape offenses.  Petitioner properly preserved this argument, in substance, on collateral review.  The appellate court did not make any findings or conclusions on which this Court can rely and the Supreme Court of Ohio did not address it directly.

The Magistrate will address the legal standard for granting relief for an ineffective assistance of counsel claim in which Petitioner argues that if he were acquitted of rape, in all reasonable probability, he should have been acquitted of kidnaping.

### A.  THE STANDARD FOR MEASURING COUNSEL'S INEFFECTIVENESS.

In *Strickland v. Washington*, 104 S. Ct. 2052 (1984), the Supreme Court held that in order to successfully claim that a lawyer's assistance was so ineffective as to violate the Sixth

18

Amendment, a defendant must meet two requirements. *Muniz v. Smith,* 647 F.3d 619, 624 (6th Cir. 2011) *cert. denied*, 132 S.Ct. 1575 (2012). "First, the defendant must show that counsel's performance was deficient." *Id.* (*citing Strickland*, 104 S.Ct. at 2064). "Second, the defendant must show that the deficient performance prejudiced the defense." *Id.*

To establish a deficient performance under the *Strickland* paradigm, the plaintiff must demonstrate that counsel's representation fell below an objective standard of reasonableness. *Id.* (*citing Wiggins v. Smith*, 123 S.Ct. 2527, 2535 (2003) (internal quotation marks omitted)). In this regard, "[t]he burden is on the defendant to make such a showing by identifying the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Id.* (*citing Tibbetts v. Bradshaw*, 633 F.3d 436, 442 (6th Cir. 2011) *cert. denied*, 132 S.Ct. 238 (2011) (*quoting Phillips v. Bradshaw*, 607 F.3d 199, 209 (6th Cir.2010)) (internal quotation marks omitted)). To establish prejudice, a plaintiff must show that a reasonable probability exists that, but for counsel's deficient performance, the result of the proceedings would have been different. *Id.* (*citing Tibbetts*, 633 F.3d at 442). In this regard, the burden is on the defendant to make such a showing, identifying acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment. *Id.* (*citing Tibbetts,* 633 F. 3d at 422) (*quoting Phillips, supra*, 607 F. 3d at 209).

When examining ineffective assistance of counsel claims, *Strickland* cautions that any court applying this analysis must do so with tremendous deference to trial counsel's decisions. *Campbell v. Coyle,* 260 F.3d 531, 551 (6th Cir. 2001) (*citing Strickland, supra*, 104 S.Ct. at 2065) ("It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has

proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable.").  Thus, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy."  *Id.* (*citing Strickland*, 104 S.Ct. at 2065) (internal quotation marks and citation omitted)).

B.      THE ALLEGED VIOLATION UNDER OHIO LAW.

In the instant case, counsel's professional judgment to refrain from objecting to the jury instructions must be measured against the backdrop of Ohio law that creates an alliance between offenses arising from the same conduct.  That is, this Court must assess whether there is a recognized similarity between the elements of the crimes and if Petitioner could be acquitted of rape and convicted of kidnaping, notwithstanding that all the offenses arose from the same set of operative facts and occurred as a part of an ongoing course of events.

The Supreme Court of Ohio has held that, even though their elements do not align exactly, kidnaping and rape are allied offenses of similar import.  *State v. Adams*, 103 Ohio St.3d 508, 528, 817 N.E.2d 29 (2004).  Consequently, to obtain separate convictions for rape and kidnaping, there must be evidence that the defendant committing the offense of kidnaping with an animus independent of the rape.  *Id.* (*see State v. Logan*, 60 Ohio St.2d 126, 131, 397 N.E.2d 1345 (1979)).  In fact, the Supreme Court of Ohio adopted guidelines for courts to determine whether kidnaping and another offense of the same or similar kind have been committed with separate animus.  *State v. Logan*, 60 Ohio St. 2d 126, 397 N. E. 2d 1345 (1979).  The court held, "Where the restraint or movement of the victim is merely incidental to a separate underlying

20

crime, there exists no separate animus sufficient to sustain separate convictions; however, where

the restraint is prolonged, the confinement is secretive, or the movement is substantial so as to

demonstrate a significance independent of the other offense, there exists a separate animus as to

each offense sufficient to support separate convictions." *Id.*

**C.**     **APPLICATION OF THE LAW TO THE CASE *SUB JUDICE*.**

The pivotal issue in this case is whether the rape and kidnaping offenses are separate

offenses, each of which has a separate animus or whether in the course of perpetrating rape,

Petitioner also committed the kidnaping offense.  There is no ambiguity in Ohio's kidnaping

statute:  a conviction can result based on restraint with a resolve or determination that non-

consensual sexual contact result.  Here, the victim testified that Petitioner broke into her house

and held her under threat of being injured with a knife for a significant period of time.  During

the prolonged restraint in the hallway, Petitioner talked and reminisced about their relationship

and followed her to the bathroom, all while exhibiting a continuum of emotions from anger to

laughter.  By her own admission, the rape occurred later (Docket No. 10-3, pp. 127-128 of 147).

Under these particular facts, there was a disconnect between the kidnaping and the rape

and neither offense appears to align itself with the other.  In fact, it appears that both offenses

were accomplished by a different force.  Petitioner moved or restrained the victim in a way other

than that which was necessary to rape her.  Petitioner's initial restraint subjected the victim to a

substantial risk of harm separate and apart from the rape.  Petitioner was considered guilty of

kidnaping on the basis that the defendant restrained the victim before the rape for the purpose of

engaging in non-consensual sexual activity, not that the non-consensual activity ever took place.

Under the *Logan* analysis, the kidnaping offense was not incidental to the rape offense but was

committed separately.  A separate animus had to exist with respect to both offenses.

The question is now whether trial counsel failed to object to the jury instruction on kidnaping and request a special verdict that would permit an acquittal on the kidnaping charge if the victim engaged in consensual sexual conduct.  The relevant portion of the jury instruction on kidnaping is substantially correct and is consistent with the prescribed designations in 2 CR OHIO JURY INSTRUCTIONS 505.01(A):

> The Court:  Count 4, kidnaping.  The defendant is charged with kidnaping.  Before you can find the defendant guilty, you must find beyond a reasonable doubt that on or about the 17th day of June 2009, in Lucas County, Ohio, the defendant Michael Jaros knowingly by force, threat, or deception, did knowingly remove another from the place where she was found, or restrain another of her liberty, **with the purpose to engage in sexual activity**, as defined in OHIO REVISED CODE 2907.01, and against her will.

(Docket No. 10-5, pp. 81-82 of 117).

This jury instruction makes it clear that the consummation of non-consensual sexual activity is immaterial to a conviction for kidnaping and that separate punishments were therefore appropriate for the commission of the two crimes.  Petitioner presents no evidence to counteract the presumption that his trial counsel's failure to object to the above cited jury instruction and to request a special instruction on the kidnaping might be considered sound trial strategy; a part of a tactical decision designed to avoid any further confusion about the separateness of these acts.  It seems reasonable that trial counsel participated in the creation of the jury instructions and that an objection would subject the jury to baseless calculations.  Scrutinizing the state of the law and trial counsel's performance under the deferential *Strickland* standard, the Magistrate is not persuaded that the failure to object or request a special verdict resulted in constitutionally ineffective performance.

22

Since Petitioner cannot establish deficient performance, his attempt to show prejudice is equally difficult to demonstrate because the bare facts weigh against it.  Petitioner has failed to allege specific facts showing that but for trial counsel's unprofessional's errors, Petitioner would have lost that which he would probably have won.  There was other substantial evidence that he kidnaped the victim.  The jury's rendering of a verdict to this effect does not undermine the confidence in the outcome of the trial.  Petitioner has not satisfied the prejudice prong of the *Strickland* test.

D. **CONCLUSION.**

Trial counsel's representation was not rendered ineffective for failing to object to the jury instruction on kidnaping or the manner in which it was delivered to the jurors.  Having failed to show that trial counsel's performance was deficient or prejudicial, the Magistrate recommends that the Court deny Petitioner's request for relief on ground four.

## XI. ANALYSIS OF PETITIONER'S FIFTH CLAIM.

Petitioner contends that the trial court erred by instructing the jury and answering a series of questions by the jury so as to imply to the jury that the "sexual activity" aspect of the kidnaping charge could be consensual sexual activity and not sexual activity against her will and by not instructing the jury as to the specific criminal offense *mens rea* element in the aggravated burglary charge and in not using special verdicts or separate verdicts, as this case involved non-grouped theories by the prosecution, such that Petitioner was denied due process of law.

In the fifth claim for relief, the Magistrate considers the actual content of this instruction on kidnaping or the proposed use of special verdicts as a state procedural claim.

A. **THE LAW.**

23

For habeas corpus relief to be warranted on the basis of an incorrect jury instruction, a petitioner must show more than "the instruction is undesirable, erroneous, or even universally condemned." *Stallings v. Bagley,* 561 F.Supp.2d 821, 855 (N.D.Ohio,2008) (*citing Estelle v. McGuire*, 112 S.Ct. 475, 482 (1991)(*citing Donnelly v. DeChristoforo*, 94 S.Ct. 1868, 1871 (1974))  A petitioner must establish that, taken as a whole, the instructions were so infirm that they rendered the entire trial fundamentally unfair.  *Id.* (*citing Henderson v. Kibbe*, 97 S.Ct. 1730, 1736 (1977); *Hardaway v. Withrow*, 305 F.3d 558, 565 (6th Cir.2002); *Buell v. Mitchell*, 274 F.3d 337, 355 (6th Cir.2001)).

Because jury instruction errors typically are matters of state law, the standard for demonstrating that a jury instruction caused constitutional error in a habeas proceeding "is even greater than the showing required to establish plain error on direct appeal."  *Id.* (*citing Henderson*, 97 S.Ct. at 1736).  A habeas petitioner's "burden is especially heavy [when] no [affirmatively] erroneous instruction was given . . .  An omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of the law."  *Id.* (*citing Henderson,* 97 S. Ct. at 1736).

B.    APPLICATION OF THE LAW *SUB JUDICE.*

The Magistrate notes that the relevant portions of the jury instructions are substantially correct as they, too, are consistent with the prescribed designations in 2 CR OHIO JURY INSTRUCTIONS 505.01(A).  Exercising broad discretion in making the distinction in the kidnaping offense, Judge Dartt fashioned instructions that were incumbent upon the jurors to determine if Petitioner's acts were consistent with the types of kidnaping prohibited in OHIO REV. CODE § 2905.01(A) and (C).  The jury was instructed as to the specific *mens rea* element in the

aggravated burglary charge. The *mens rea* element for aggravated burglary was defined by the court as "purpose." Judge Dartt also defined "purpose" (Docket No. 10-5, p. 80 of 117). There is nothing in this instruction which implies that the sexual activity aspect of the kidnaping charge could be from consensual sexual activity. In fact the converse implication from these instructions is that the sexual activity aspect of the kidnaping charge could not be consensual sexual activity. Neither is there anything which implies that the trial court dispensed with the *mens rea* element in defining the elements of aggravated burglary. Petitioner has failed to meet that heavy burden that shows that an affirmatively erroneous instruction was given.

Nevertheless, the content of the instruction as well as the court's decision to grant counsel's request to provide special verdicts in the state criminal case is a state court issue. Such decision does not form a basis for federal habeas relief because any alleged errors emanating therefrom, do not create prejudice of a constitutional magnitude. Neither has Petitioner demonstrated that the above cited instruction infected the entire trial to the extent that the conviction violated due process.

The Magistrate is persuaded that Petitioner's challenge to state law procedural and evidentiary issues raise no constitutional concerns. It is recommended that the Court deny Petitioner's request for relief on ground five.

## XII. CONCLUSION

For these reasons, the Magistrate recommends that the Court deny the Petitioner's Petition for Writ of Habeas Corpus and terminate the referral to the undersigned Magistrate Judge.

/s/Vernelis K. Armstrong
United States Magistrate Judge

Date:          November 20, 2012.


## XIII. NOTICE.

Please take notice that as of this date the Magistrate Judge's report and recommendation attached hereto has been filed.  Pursuant to Rule 72.3(b) of the LOCAL RULES FOR NORTHERN DISTRICT OF OHIO, any party may object to this report and recommendations within fourteen (14) days after being served with a copy thereof.  Failure to file a timely objection within the fourteen-day period shall constitute a waiver of subsequent review, absent a showing of good cause for such failure.  The objecting party shall file the written objections with the Clerk of Court, and serve on the Magistrate Judge and all parties, which shall specifically identify the portions of the proposed findings, recommendations, or report to which objection is made and the basis for such objections.  Any party may respond to another party's objections within fourteen days after being served with a copy thereof.

Please note that the Sixth Circuit Court of Appeals determined in *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981) that failure to file a timely objection to a Magistrate's report and recommendation foreclosed appeal to the court of appeals.  In *Thomas v. Arn*, 106 S. Ct. 466 (1985), the Supreme Court upheld that authority of the court of appeals to condition the right of appeal on the filing of timely objections to a report and recommendation.

27